UNITED STATES DISTRICT COURT
.EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

AKILI EUGENE ARMSTRONG,

                Petitioner,

v.                                     Case No. 09-cv-14808
                                     Hon. Avern Cohn
SHIRLEE HARRY,

                Respondent.

_____/

**MEMORANDUM AND ORDER**
**DENYING THE PETITION FOR WRIT OF HABEAS CORPUS**
**AND DECLINING TO ISSUE A CERTIFICATE OF APPEALABILITY**

**I.  Introduction**

      This is a habeas case under 28 U.S.C. § 2254.  Petitioner Akili Eugene

Armstrong is challenging his state convictions for resisting and obstructing a police

officer, operating a vehicle under the influence of liquor, and three weapon offenses.

Petitioner claims that he was denied a fair trial due to ineffective assistance of trial

counsel, prosecutorial misconduct, an erroneous jury instruction, police misconduct, and

a verdict that was against the great weight of the evidence.  For the reasons that follow,

the petition will denied.  The Court will also decline to issue a certificate of appealability.

**II.  Background**

      Petitioner initially was charged with six counts, as follows: (1) carrying a

concealed weapon (CCW); (2) felon in possession of a firearm; (3) possession of a

firearm during the commission of, or attempt to commit, a felony (felony firearm); (4)

resisting or obstructing a police officer; (5) operating a vehicle under the influence of liquor (OUIL); and (6) possession of a firearm while under the influence of liquor. The sixth count (possession of a firearm while intoxicated) was dismissed before trial. Petitioner stood trial on the other five counts, which arose from an incident that occurred on Lahser Road in Southfield, Michigan at approximately 3:00 a.m. on January 27, 2006.

### A. The Trial Testimony

Parole officer William Rogers testified at Petitioner's trial in state court that Petitioner was a parolee on January 27, 2006, and not eligible to carry a firearm. Rogers explained that one of Petitioner's prior convictions was for felon in possession of a firearm and that Petitioner had been advised he could not possess a gun.

Petitioner's girlfriend, Joypalova Alford, testified that Petitioner picked her up in his car about 1:00 a.m. on January 27, 2006. They went to a friend's house where everybody, including Petitioner, was drinking. About 3:00 a.m., they headed to Petitioner's house. Petitioner was driving, and on the way to his house, he was swerving in and out of lanes. The police stopped him, asked for his license and registration, and then instructed him to get out of the car. Petitioner initially refused to get out of the car, but eventually he exited the car. As the officers patted him down, Petitioner tried to get back in his car. The officers pulled him out of the car and began to wrestle with him. At that point, she looked over and saw the handle of a gun sticking out of the pouch in the car door on the driver's side. The gun was later found underneath the car; however, Alford testified that she did not see how it got there. After Petitioner fell to the ground, the officers picked him up and put him in the squad car.

2

The officers searched her, but released her and dropped her off at a doughnut shop.

Police Officer Daniel Van Lacken testified that he was on routine patrol duty in Southfield about 3:15 a.m. on January 27, 2006, when he observed a car traveling northbound on Lahser Road at more than 60 miles per hour in a forty-mile-an-hour zone. The car crossed over the center lane into the left lane of southbound Lahser. He activated his lights and sirens because he thought the driver might be intoxicated. He advised the dispatcher that he was effecting a traffic stop. Then he approached the driver's side of the stopped vehicle and asked the driver for his license and paperwork for the vehicle. He identified Petitioner at trial as the driver. Van Lacken also testified that although Petitioner rolled down his window about six or seven inches, he had trouble passing his paperwork through the window.

Van Lacken further testified that he smelled intoxicants coming from the car, but Petitioner told him that he had not been drinking. He asked Petitioner a couple of times to get out of the vehicle. Petitioner eventually complied and stood on the side of the car where Van Lacken patted him down for offensive weapons because a safety alert came over the radio as he was speaking with Petitioner. He attempted to pat down the front of Petitioner's waist, but he was unable to do so because Petitioner leaned close to the vehicle. When Van Lacken asked Petitioner to step back or to stop moving, Petitioner ran toward the driver's side of his vehicle and tried to get inside the car. Petitioner grabbed the steering wheel of the vehicle with one hand, but Van Lacken and the other officers were able to remove Petitioner from the vehicle. As Petitioner fell to the ground, Van Lacken heard a metal object hit the pavement, and he saw Petitioner's left hand move in the direction of the undercarriage of the car. Because Petitioner refused to get

3

off the ground, the officers picked him up.  Van Lacken offered Petitioner a field sobriety test, but he refused to take it.  As a result, Van Lacken obtained a search warrant and took Petitioner to the hospital to determine Petitioner's blood alcohol content.

Van Lacken testified that the video camera on his vehicle was working that night and that it recorded the incident.   A dark area on the inside of the car door was visible on the videotape, but Van Lacken did not see the object at the time of the incident.  He thought that Petitioner's left hand had been free and capable of tossing a gun under the car.

Southfield police officer Keith Toupin testified that he was on patrol duty when he received information that Van Lacken needed back-up assistance.  When he approached the area of Ten Mile Road and Lahser, he saw Van Lacken speaking with the driver of the vehicle.  There was a woman in the passenger seat of the car, and Petitioner was the uncooperative driver.  Petitioner eventually opened the car door and exited the vehicle.

Toupin had received information from the dispatcher that Petitioner had a prior weapons charge.  So, he and Van Lacken tried to get Petitioner to the back of the vehicle to pat him down for weapons and to perform a sobriety test.  During that process, Petitioner broke away and tried to get back in his car.  Petitioner managed to get his right leg and foot inside the car, and he grabbed the steering wheel with his right hand. His left hand and arm were free.  After a struggle, the officers managed to pull Petitioner out of the car and handcuff him.  By then, some other officers had arrived, and Petitioner was put in a squad car.  Sergeant Boal arrived at the scene and pointed out a gun lying under Petitioner's car on the driver's side.  Because Petitioner did not

4

consent to a breath test, they took him to the hospital to have his blood drawn.

Toupin further explained that Van Lacken's car had been equipped with a video machine, which recorded the incident. The videotape was played for the jury during Toupin's testimony. Toupin testified that, during the officers' struggle with Petitioner, Petitioner managed to get a gun out of the car with his left hand. According to Toupin, a dark spot, which initially was visible in the videotape near the open car door, was no longer visible at a later point in the videotape, but none of the three officers at the scene saw Petitioner with a gun.

Sergeant Timothy Boal testified that, shortly after Van Lacken conducted a traffic stop, a call was made for assistance. By the time he responded to the scene, the suspect had been taken into custody and was sitting in the rear seat of the patrol car. Boal looked at the suspect's vehicle and noticed something under the driver's door of the car. He pointed out the object to Specialist Langewicz, who identified it as a weapon.

Police Officer Thomas Langewicz testified that he was an evidence technician. He, too, was on routine patrol duty when he learned that Van Lacken had requested assistance. The dispatcher had issued an "officer safety caution," which meant that the suspect had been convicted of a violent or serious felony. When he arrived at the scene, Van Lacken and Toupin were struggling with Petitioner and handcuffing him. As he (Langewicz) started to search the inside of the vehicle, Boal pointed out something under the vehicle. Langewicz then looked under the car and observed a handgun. He got his camera and took pictures of the gun. The gun was fully loaded and had been reported as stolen in 1979. It had black electrical tape on the handle.

5

Police Officer Edward Maresh testified that he examined the gun in evidence and determined that it was functional. He also conducted a fingerprint analysis of the gun and found no usable fingerprints on the gun, the bullets, or the tape that was wrapped around the handle of the gun.

### B. The Stipulations, Theories, Verdict, and Sentence

Petitioner stipulated to the chain of evidence pertaining to the blood that was drawn from him. He also stipulated that his blood alcohol level after his arrest was .16 grams of alcohol per 100 milliliters of blood, or twice the legal limit, and that he had refused to take the breathalyzer test. He waived the remaining endorsed witnesses, and he declined to testify. He also did not call any witnesses.

The prosecutor's theory was that Petitioner was a convicted felon, who was driving while intoxicated on January 27, 2006, and who possessed a gun, which he was not entitled to have. Defense counsel conceded in his closing argument that Petitioner had a prior conviction and was not eligible to possess a gun. Defense counsel also conceded that the prosecutor had proved Petitioner was a drunk driver on January 27, 2006. Defense counsel nevertheless maintained that the prosecution had failed to prove beyond a reasonable doubt that Petitioner was in possession of a gun that night.

On January 30, 2007, the jury found Petitioner guilty of: CCW, Mich. Comp. Laws § 750.227; felon in possession of a firearm, Mich. Comp. Laws § 750.224f; felony firearm, second offense, Mich. Comp. Laws § 750.227b; resisting or obstructing a police officer, Mich. Comp. Laws § 750.81d(1); and OUIL, second offense, Mich. Comp. Laws § 257.625. The trial court sentenced Petitioner as a habitual offender, third offense, to imprisonment for concurrent terms of two to ten years for the CCW

6

conviction, five years for the felony firearm conviction, and two to four years for the resisting or obstructing conviction.  The trial court ordered Petitioner to serve those sentences consecutively to a sentence of two to ten years in prison for the felon-in-possession conviction.  The court sentenced Petitioner to 365 days in jail for the OUIL conviction, but issued 384 days of credit for time served.

### C. The Appeal

Petitioner raised two sentencing claims through counsel in a direct appeal of right.  He presented his five habeas claims to the state appellate court in a pro se supplemental brief.  The Michigan Court of Appeals, in a comprehensive decision, affirmed Petitioner's convictions, but remanded his case to the trial court for correction of the judgment of sentence, because the judgment inaccurately specified the order in which Petitioner's sentences were to be served.  See People v. Armstrong, No. 276599, 2008 WL 4603585 (Mich. Ct. App. Oct. 16, 2008).  The trial court amended the judgment of sentence on remand pursuant to the state appellate court's ruling.  Petitioner then presented his claims to the Michigan Supreme Court, which denied leave to appeal on September 28, 2009, because it was not persuaded to review the issues.  See People v. Armstrong, 772 N.W.2d 363 (Mich. 2009).[1]

### D.  The Habeas Petition and Responsive Pleading

Petitioner then filed the instant petition, presenting the following claims: (1) he

---

[1] Then-Chief Justice Marilyn J. Kelly voted to grant leave to appeal for the reasons she gave on sentencing issues in People v. Idziak, 773 N.W.2d 616 (Mich. 2009).  Justice Michael F. Cavanagh voted to grant leave to appeal to reconsider Idziak. Petitioner does not raise this sentencing issue, which is grounded on state law, on habeas review.

was denied effective assistance of counsel due to trial counsel's errors and omissions;
(2) the prosecutor engaged in misconduct; (3) the jury instructions were erroneous; (4)
the police officers committed perjury; and (5) the jury verdict was against the great
weight of the evidence.[2]

Respondent contends that Petitioner's trial attorney was not ineffective, and the
Michigan Court of Appeals reasonably determined that Petitioner's ineffectiveness claim
lacked merit.  Respondent further argues that Petitioner's second and third claims
regarding the prosecutor and jury instructions are procedurally defaulted because
Petitioner waived the issues, failed to preserve the issues at trial, or did not adequately
set forth the basis for his claims on appeal.  Finally, Respondent contends that
Petitioner's fourth and fifth claims regarding police misconduct and the weight of the
evidence are not cognizable on habeas review

.                           **III.  Standard of Review**

"The statutory authority of federal courts to issue habeas corpus relief for
persons in state custody is provided by 28 U.S.C. § 2254, as amended by the
Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA)."  Harrington v. Richter,
__ U.S. __, __, 131 S. Ct. 770, 783 (2011).  Pursuant to § 2254, state prisoners are not
entitled to the writ of habeas corpus unless the state court's adjudication of their claims
on the merits

> (1)    resulted in a decision that was contrary to, or involved an
>        unreasonable application of, clearly established Federal law,

---

[2] Because Petitioner did not fully explain these claims in his habeas brief, the
Court has looked to Petitioner's pro se appellate brief in state court for further
elucidation of the claims.

8

as determined by the Supreme Court of the United States; or

(2)    resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceedings.

28 U.S.C. § 2254(d).

Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts. Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

Williams v. Taylor, 529 U.S. 362, 412-13 (2000).  "[W]here factual findings are challenged, the habeas petitioner has the burden of rebutting, by clear and convincing evidence, the presumption that the state court's factual findings are correct."  Goodwin v. Johnson, 632 F.3d 301, 308 (6th Cir. 2011) (citing 28 U.S.C. § 2254(e)(1) and Landrum v. Mitchell, 625 F.3d 905, 914 (6th Cir. 2010)).

"A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision."  Richter, 131 S. Ct. at 786.  To obtain a writ of habeas corpus from a federal court, a state prisoner must show that the state court's ruling on a claim "was so lacking in justification" that it resulted in "an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement."  Id. at 786-87.

9

## IV.  Analysis

## A.  Trial Counsel

In his first claim, Petitioner contends that his attorney was constitutionally ineffective.  Petitioner also asserts that the cumulative effect of his attorney's acts and omissions were prejudicial.  The Michigan Court of Appeals considered all of Petitioner's allegations on the merits, ultimately concluding that Petitioner was not deprived of the effective assistance of counsel.

The Supreme Court's decision in Strickland v. Washington, 466 U.S. 668 (1984), is clearly established federal law for purposes of evaluating an ineffective-assistance-of-counsel claim.  Cullen v. Pinholster, __ U.S. __, __, 131 S. Ct. 1388, 1403 (2011). Under Strickland, an attorney is constitutionally ineffective if his or her "performance was deficient" and "the deficient performance prejudiced the defense."  Strickland, 466 U.S. at 687.

To establish deficient performance, a habeas petitioner must show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment."  Id.  "Judicial scrutiny of counsel's performance must be highly deferential."  Id. at 689.  "[T]he defendant must overcome the presumption that, under the circumstances, the challenged action "might be considered sound trial strategy."  Id. (quoting Michel v. Louisiana, 350 U.S. 91, 101 (1955)).

To demonstrate that counsel's performance prejudiced the defense, a habeas petitioner must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome."  Id. at 694.  "This

10

does not require a showing that counsel's actions 'more likely than not altered the outcome,'" but "[t]he likelihood of a different result must be substantial, not just conceivable." <u>Richter</u>, 131 S. Ct. at 792 (quoting <u>Strickland</u>, 466 U.S. at 693).  "The standards created by <u>Strickland</u> and § 2254(d) are both 'highly deferential,' and when the two apply in tandem, review is 'doubly' so." <u>Id</u>. at 788 (internal and end citations omitted).

Petitioner presents several instances of alleged ineffectiveness.   Each allegation is addressed in turn below.

### 1.  The Prior Conviction for Felon-in-Possession

Petitioner alleges that his attorney should have moved to sever the felon-in-possession count from the other counts because Petitioner had a prior conviction for felon in possession of a firearm.  In the alternative, Petitioner argues that his attorney should have stipulated that he had a prior conviction, without disclosing the nature of the prior conviction, and requested a jury instruction directing the jurors not to use the prior conviction as character evidence or as proof of guilt for the pending count of felon in possession of a firearm.  The Michigan Court of Appeals found no merit in these claims.

All five counts against Petitioner arose from the same incident, and the felon-in-possession count was the predicate felony for the felony firearm count.  Consequently, it was appropriate to try the counts together, and it is unlikely that the trial court would have agreed to sever the felon-in-possession count from the other counts.  "[F]ailing to make a futile motion is neither unreasonable nor prejudicial." <u>Jacobs v. Sherman</u>, 301 F. App'x 463, 470 (6th Cir. 2008) (citing <u>Strickland</u>, 466 U.S. at 687).

11

As for defense counsel's failure to stipulate to the prior conviction, Petitioner personally refused to stipulate to anything.  (Tr. Jan. 26, 2007, at 5-6.)  Defense counsel was not ineffective for honoring Petitioner's desire not to stipulate to anything and to require the prosecution to prove all elements of the crimes.

Although defense counsel could have requested a curative jury instruction, informing the jury not to assume that Petitioner was a bad person or guilty of count two simply because he had a prior conviction for the same offense.  However, the trial court did instruct the jurors not to let prejudice influence their verdict (Tr. Jan. 30, 2007, at 5), and the evidence against Petitioner was strong.  Moreover, the curative instruction would have emphasized the fact that the prior conviction was for the same offense as the second count.  Thus, defense counsel acted reasonably in not requesting such an instruction.

Overall, there is no reasonable probability that the result of the trial would have been different if defense counsel had requested a curative instruction.  Therefore, defense counsel's allegedly deficient performance did not prejudice the defense.  The Michigan Court of Appeals' similar conclusion is not unreasonable.

## 2.  The Jury Instruction

Petitioner next argues that his attorney should have objected when the trial court mentioned a sixth count during the court's charge to the jury.  Petitioner was tried on five counts, but the trial court inadvertently mentioned a sixth count during its charge to the jury.

There was a bench conference following the trial court's error (id. at 23), and it is possible that defense counsel asked the trial court not to address the matter in the hope

12

that the jury would overlook the mention of a sixth count.  Furthermore, as pointed out more fully below, see infra section IV.C., it was obvious throughout the trial that Petitioner was charged with only five counts.  The jury could have viewed the trial court's error as a slip of the tongue.  An objection would have drawn more attention to the error.  As such, it cannot be said that defense counsel was ineffective in this regard.

In sum, the Court agrees with the Michigan Court of Appeals that it was reasonable for counsel to conclude that there was no basis for an objection, because only someone familiar with the dismissed sixth count would have interpreted the court's misstatement as a reference to the count.  Defense counsel was not ineffective for failing to object to the fleeting mention of a sixth count

### 3.  The Breathalyzer Test

Petitioner also argues that defense counsel should have requested a cautionary jury instruction when a police officer testified that Petitioner refused to take a breathalyzer test.  Petitioner contends that the jury interpreted his refusal to take the test as consciousness of guilt on the OUIL charge.  The Michigan Court of Appeals rejected this claim, finding that Petitioner had failed to overcome the presumption of reasonable trial strategy and had failed to demonstrate a reasonable probability that the outcome of the trial would have been different had a cautionary jury instruction been given.

The Court agrees with the court of appeals.  There was ample evidence that Petitioner had been driving while intoxicated and that his blood alcohol level was twice the legal limit at the time. The prosecutor relied on this evidence, and not Petitioner's refusal to take a breathalyzer test, to establish Petitioner's guilt on the OUIL charge.

13

Therefore, Petitioner was not prejudiced by defense counsel's failure to request a cautionary instruction about Petitioner's refusal to take a breathalyzer test.

### 4.  Opening Statement

Petitioner also faults his attorney for not making an opening statement.  The Michigan Court of Appeals concluded on review of this claim that Petitioner had failed to overcome the presumption that defense counsel's decision not to make an opening statement was a matter of sound trial strategy.

The purpose of an opening statement "is to state what evidence will be presented, to make it easier for the jurors to understand what is to follow, and to relate parts of the evidence and testimony to the whole . . . ."  United States v. Dinitz, 424 U.S. 600, 612 (1976) (Burger, C.J., concurring).  "An attorney's decision not to make an opening statement 'is ordinarily a mere matter of trial tactics and . . . will not constitute . . . a claim of ineffective assistance of counsel.'")  Millender v. Adams, 376 F.3d 520, 525 (6th Cir. 2004) (quoting Millender v. Adams, 187 F. Supp. 2d 852, 870 (E. D. Mich. 2002) (quoting United States v. Rodriguez-Ramirez, 777 F.2d 454, 457 (9th Cir. 1985)).

Defense counsel initially reserved his opening statement.  (Tr. Jan. 26, 2007, at 132.)  He later declined to make an opening statement after Petitioner waived his right to testify, and he informed the trial court that his decision was a matter of trial strategy. (Tr. Jan. 29, 2007, at 187-88).  Because Petitioner chose not to testify and did not present any witnesses, defense counsel made a reasonable decision not to give an opening statement.  The decision did not amount to deficient performance.

### 5.  The Defense

Petitioner further says that his attorney failed to present a defense to the three

firearm counts.  The record disproves this claim.  Defense counsel argued that there

was no testimony that Petitioner owned a gun, carried or possessed a gun, touched the

gun which was recovered at the scene, or concealed the gun.  Defense counsel also

pointed out that the police officers never saw the gun in the car, that Alford did not see it

initially, and that the prosecutor failed to produce a written statement by Alford informing

the police that she had seen a gun.  Defense counsel maintained that it would have

been physically impossible for Petitioner to have removed the gun from the car and to

have thrown it under the car.  Defense counsel also pointed out that Alford had claimed

to see a gun with a brown wooden handle, whereas the gun in question had black

electrical tape on the handle when the police discovered it.  Defense counsel argued

that a black object in the videotape or a photograph was not evidence beyond a

reasonable doubt that there was a gun present in Petitioner's car.  (Id. at 215, 221-29.)

Petitioner nevertheless claims that his attorney should have argued that the

police officers planted the gun under his car, that the officers were racially motivated,

and that they framed him for a crime he did not commit because he was black, an ex-

convict, and disgruntled.  There was no evidence to support the defense that Petitioner

was stopped because of his race.  The officer who stopped him testified that Petitioner

was speeding and driving erratically.  He detained Petitioner because he thought

Petitioner was drunk and because Petitioner was uncooperative.

There also was no basis for suggesting that the officers planted a gun under

Petitioner's car.  The officers testified that they did not even see the gun until a fourth

officer arrived from the opposite direction and pointed it out to them.  Alford, moreover,

testified that Petitioner had a gun concealed in his car before he was stopped.  Another

15

witness thought that Petitioner may have flung the gun under the car during his altercation with the police. Defense counsel was not ineffective for failing to argue that Petitioner was framed due to his race, attitude, or status as an ex-convict. Petitioner is not entitled to habeas relief on this ground.

### 6. The Exhibits

Petitioner argues that his attorney should have moved to suppress prosecution exhibits 1-2, 6-9, and 11-12 and refrained from introducing exhibit 3 into the proceedings. The Michigan Court of Appeals found no merit in these claims because the undisputed evidence was considerable, defense counsel pursued a reasonable trial strategy, and Petitioner was not prejudiced by the introduction of exhibit 3.

Exhibit 1 was a certified copy of a paper showing that Petitioner had a prior conviction for felon in possession of a firearm. Exhibit 2 was a certified copy of a paper showing that Petitioner was not entitled to possess a gun and did not ask to have his rights restored. The prosecutor was entitled to admit these exhibits because Petitioner refused to stipulate that he had a prior conviction for felon in possession of a firearm. There was no basis for objecting to the exhibits.

Exhibit 3 was a joint exhibit. It was a signed copy of the conditions that Petitioner was expected to abide by while on parole from a prior conviction. The exhibit was admitted after Petitioner's parole officer testified that Petitioner had been informed he could not possess a firearm. (Tr. Jan. 26, 2007, at 142-43). The admission of the exhibit was not prejudicial because the parole officer had already testified that Petitioner was advised he could not possess a gun. (Id. at 137.)

Exhibit 6 was a photograph of the interior of Petitioner's car where the gun

16

supposedly was concealed before the police stopped Petitioner.  Exhibit 7 was the gun itself, and exhibit 8 was the electrical tape that was on the handle of the gun when the police discovered it.  Exhibit 9 was a picture of the gun, and exhibit 11 was a group of three pictures of the gun under the car.  Exhibit 12 was the videotape of the incident. Although Petitioner contends that the prosecution tampered with the exhibits, there is no evidence to support that allegation.  Because he has not alleged an adequate basis for objecting to the admission of exhibits 6-9 and 11-12, defense counsel was not ineffective for objecting to those exhibits.

### 7.  Expert Witness

Petitioner also says that his attorney was remiss for failing to produce an expert witness on fingerprints.  Petitioner contends that a defense expert witness could have testified that it was impossible for the gun to land under Petitioner's car without  any fingerprints on it unless the prints were wiped off.  And because the gun was a former police weapon, which was reported stolen in 1979 when Petitioner was only six years old, Petitioner contends that the expert's testimony would have allowed the jury to infer that the police planted the gun under the car.  The Michigan Court of Appeals rejected this claim because there was no basis for concluding that a fingerprint expert could have provided a substantial defense.  The Court agrees.

The State's witness, evidence technician Edward Maresh, testified that there were no usable fingerprints on the gun, on the electrical tape, on the bullets, or on anything submitted to him.  (Tr. Jan. 29, 2007, at 177-80.)  Consequently, there was no fingerprint evidence to rebut and no reason to believe that the police planted the gun under Petitioner's car.

17

"An attorney need not pursue an investigation that would be fruitless," and Strickland does not require "an equal and opposite expert from the defense" for every prosecution expert.  Richter, 131 S. Ct. at 789, 791.  Therefore, defense counsel was not ineffective for failing to call a defense expert witness on fingerprint identification.

### 8.  The Preliminary Examination Transcript; Impeachment Evidence

Petitioner further alleges that his attorney failed to investigate evidence of tampering with the exhibits and failed to review the transcript of the preliminary examination in order to impeach Officers Van Lacken and Langewicz with their inconsistent testimonies at trial.  The Michigan Court of Appeals rejected this claim on the ground that Petitioner had not shown how an additional investigation would have supported his evidence-tampering theory.  The Michigan Court of Appeals also determined that Petitioner had not overcome the presumption of sound trial strategy, nor shown that he was prejudiced by counsel's alleged deficiency.

Failure to impeach a witness with prior inconsistent statements can amount to ineffective assistance when it deprives a defendant of a meaningful defense.  See Blackburn v. Foltz, 828 F.2d 1177, 1184, 1186 (6th Cir. 1987).  But to prevail on his claim, Petitioner must show "'a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'"  Id. (quoting Strickland, 466 U.S. at 694).  Each officers' testimony is examined below in light of this standard.

### a.  Officer Langewicz

Petitioner says that, at the preliminary examination, Langewicz did not mention the fact that Bole noticed the gun under Petitioner's car, whereas, at trial, Langewicz did

18

testify about Bole's discovery of the gun.  While this is true (cf. Tr. Mar. 2, 2006, at 21-
27 with Tr. Jan. 29, 2007, at 126), the identity of the person who first discovered the gun
was immaterial.  Therefore, defense counsel was not ineffective for failing to impeach
Langewicz with his testimony from the preliminary examination.

### b.  Officer Van Lacken

Petitioner claims that Van Lacken's testimony at the preliminary examination also
was inconsistent with his trial testimony.  As an example, Petitioner claims that Van
Lacken testified at the preliminary examination that Petitioner had a gun in the
waistband of his pants.

Van Lacken's actual testimony at the preliminary examination was that he
performed a pat down search of Petitioner for possible weapons and that Petitioner tried
to prevent him from patting him down in the front of his waistband.  Van Lacken did not
say that Petitioner had a gun in his waistband (Tr. Mar. 2, 2006, at 8-9), and his
testimony on this issue at trial was similar to his testimony at the preliminary
examination.  (Tr. Jan. 29, 2007, at 55-56.)  Consequently, defense counsel was not
ineffective for failing to impeach Van Lacken on this point.

Petitioner also takes issue with Van Lacken's testimony at the preliminary
examination that Petitioner grabbed the steering wheel of his car with his left hand when
he tried to re-enter his car.  (Tr. Mar. 2, 2006, at 9-10.)  At trial, Van Lacken testified that
he could not remember which hand Petitioner used.  (Tr. Jan. 29, 2007, at 58.)  In
addition, at the preliminary examination, Van Lacken did not mention a dark object in
the segment of the videotape which focused on Petitioner's car door, whereas at trial he
testified that the videotape depicted an object there.  (Id. at 61-62.)

19

Petitioner maintains that the gun in evidence was either in his waistband or in the pouch of his car and that he could not have grabbed the gun with his left hand if he were using the same hand to grab the steering wheel. Petitioner concludes that Van Lacken fabricated his trial testimony to make it more feasible and more favorable to the prosecution. This argument is not well-taken. Mere inconsistencies in testimony do not establish perjury. United States v. Lochmondy, 890 F.2d 817, 822 (6th Cir. 1989). Nor do contradictions or changes in a witness's testimony establish perjury. United States v. Lebon, 4 F.3d 1, 2 (1st Cir. 1993). Furthermore, Van Lacken explained at trial that, as Petitioner fell to the ground outside his car, his left hand moved in the direction of the undercarriage of his car. (Tr. Jan. 29, 2007, at 103-04.) He testified similarly at the preliminary examination. (Tr. Mar. 2, 2006, at 11.) So, even if defense counsel had tried to impeach Van Lacken about which hand Petitioner placed on the steering wheel, there was evidence that Petitioner somehow obtained the gun and was able to slide it under his car. The failure to attempt to impeach Van Lacken on the issue was harmless.

In short, the fact that Van Lacken did not testify about the dark object in Petitioner's car door at the preliminary examination does not mean that Van Lacken fabricated his testimony at trial. He simply was not asked about the dark object at the preliminary examination.

Defense counsel, moreover, elicited important testimony from Van Lacken on cross-examination of him at trial. He elicited testimony that Van Lacken had not noticed the dark object in the car when he questioned Petitioner on the night in question. He also elicited testimony that Petitioner had not done anything threatening with his hands

20

and that Van Lacken did not see Petitioner grab a gun or toss anything under the car. (Tr. Jan. 29, 2007, at 91-92, 96.)

In conclusion, defense counsel's cross-examination of the two officers was adequate.  Petitioner has not shown that further impeachment would have made a difference in the outcome of his trial.  Therefore, the alleged failure to read the preliminary examination transcript and to impeach the officers with the transcript of that proceeding did not prejudice the defense or amount to ineffective assistance of counsel. Petitioner is not entitled to habeas relief on this ground.

### 9.  The Prosecutor's Conduct

Petitioner says that his attorney should have objected to the prosecutor's misconduct.  This allegation falls short of showing ineffective assistance of counsel.  As explained below, see infra section IV.B, the record does not support Petitioner's allegations of prosecutorial misconduct.  The prosecutor did not breach an agreement to stipulate to an exhibit, use perjured testimony, introduce false evidence, or bully the witnesses.  Even if the prosecutor vouched for Joypalova Alford's credibility, Alford's testimony was corroborated by testimony from the other witnesses and by the videotape of the incident.  And the prosecutor's introduction of evidence concerning Petitioner's prior conviction was necessary because Petitioner refused to stipulate to anything and wanted the prosecution to proceed with its proofs.  (Tr. Jan. 26, 2007, at 5-6.)

The prosecutor's conduct either was not improper or the alleged impropriety was not flagrant.  The Court therefore agrees with the Michigan Court of Appeals that, because Petitioner's claims about the prosecutor lack merit, defense counsel was not ineffective for failing to object to the prosecutor's conduct.  An attorney is not required to

raise a meritless argument to avoid a charge of ineffective assistance.  Ludwig v. United States, 162 F.3d  456, 459 (6th Cir. 1998).

### 10.  The Sentence

Petitioner's final allegation against his attorney is that he to object to the trial court's refusal to give Petitioner 384 days of jail credit on his paroled sentence.  The Michigan Court of Appeals agreed that Petitioner was entitled to the credit, but stated that neither it, nor the trial court, had the authority to grant credit on a prior case. Because the trial court had no authority to grant credit against Petitioner's prior sentence, defense counsel was not ineffective for failing to ask for the credit.

### 11.  Summary

Trial counsel's performance was not deficient, and the alleged deficiencies did not prejudice the defense.  Therefore, defense counsel was not constitutionally ineffective, and the state court's adjudication of Petitioner's ineffectiveness claim was not contrary to, or an unreasonable application of, Strickland.

### B.  The Prosecutor

The second habeas claim alleges prosecutorial misconduct.  Petitioner claims that the prosecutor (1) injected evidence of his prior conviction, (2) injected unfavorable character evidence about Petitioner, (3) breached an agreement to stipulate to an exhibit, (4) used perjured testimony, (5) introduced falsified evidence, (6) vouched for a witness's credibility, and (7) bullied or tampered with witnesses.

The Michigan Court of Appeals reviewed Petitioner's prosecutorial-misconduct claim for "plain error" affecting Petitioner's substantial rights because Petitioner did not

22

object to any of the challenged conduct.[3]  The court of appeals also found no merit in Petitioner's allegations about the prosecutor.

### 1.  Clearly Established Federal Law

"Claims of prosecutorial misconduct are reviewed deferentially on habeas review." Millender v. Adams, 376 F.3d at 528 (citing Bowling v. Parker, 344 F.3d 487, 512 (6th Cir. 2003)).  To prevail on his claim, Petitioner must demonstrate that the prosecutor's remarks infected the trial with such unfairness "as to make the resulting conviction a denial of due process." Donnelly v. DeChristoforo, 416 U.S. 637, 643 (1974).

"'To satisfy the standard for prosecutorial misconduct, the conduct must be both improper and flagrant.'" Matthews v. Parker, 651 F.3d 489, 505 (6th Cir. 2011) (quoting Broom v. Mitchell, 441 F.3d 392, 412 (6th Cir. 2006)), petition for cert. filed, Nos. 11-845 and 11A508 (U.S. Dec. 28, 2011).  Federal courts consider the following four factors when determining whether a prosecutor's improper conduct was so flagrant as to warrant reversal:

> (1) the likelihood that the remarks of the prosecutor tended to mislead the jury or prejudice the defendant; (2) whether the remarks were isolated or extensive; (3) whether the remarks were deliberately or accidentally made; and (4) the total strength of the evidence against the [petitioner].

Id. at 506 (quoting Broom, 441 F.3d at 412.)

### 2.  Application

---

[3] As a result of the state court's ruling, Respondent maintains that this claim is procedurally defaulted.  Because "federal courts are not required to address a procedural-default issue before deciding against the petitioner on the merits," Hudson v. Jones, 351 F.3d 212, 215 (6th Cir. 2003) (citing Lambrix v. Singletary, 520 U.S. 518, 525 (1997)), the Court therefore will review the substantive merits of Petitioner's claim.

23

Petitioner's contention that the prosecutor injected unfavorable character evidence and prior "bad acts" evidence fails to raise a constitutional claim and, therefore, is not cognizable on habeas corpus review.  <u>Bey v. Bagley</u>, 500 F.3d 514, 523 (6th Cir. 2007).  Petitioner's other claims – that the prosecutor deceived the trial court and jurors by bullying a state witness, vouching for a witness, and using perjured testimony and false evidence – also lack merit.  Prosecutors may not rely on false evidence or allow it to go uncorrected.  <u>Giglio v. United States</u>,  405 U.S. 150, 153 (1972).  But to prevail on his claim that the prosecutor used false testimony, Petitioner must show that (1) the testimony was actually false, (2) the false statements were material, and (3) the prosecutor knew the testimony was false.  <u>Coe v. Bell</u>, 161 F.3d 320, 343 (6th Cir. 1998) (quoting <u>Lochmondy</u>, 890 F.2d at 822).

The record fails to support Petitioner's claim that the prosecutor suborned perjury, introduced falsified evidence, or tampered with witnesses.  In fact, the witnesses corroborated each other's testimony, and the videotape of the incident, which was shown to the jury, supported the witnesses' testimony.  Although the prosecutor did appear to vouch for Joypalova's Alford's credibility by stating that she was telling the truth about seeing the gun in Petitioner's car (Tr. Jan. 29, 2007, at 199), the police officers' testimony and the videotape verified that Petitioner possessed a firearm on January 27, 2006.  Given the strength of the evidence against Petitioner, it is highly unlikely that the prosecutor's remarks about Alford prejudiced the defense.

Petitioner also has no right to relief on his claim that the prosecutor breached an agreement to stipulate to the report on his blood-alcohol level.  The parties stipulated that two vials of blood were drawn from Petitioner and given to the Southfield Police

24

Department and then to the Michigan State Police crime lab.  The parties also stipulated

that Petitioner's blood alcohol level was .16 grams of alcohol per 100 milliliters of blood,

or twice the legal limit.  (Id. at 183-84; 195-96.)  The prosecutor abided by his

agreement not to call witnesses involved in the chain of custody and the taking and

analysis of the blood.  And his closing argument – that Petitioner's blood alcohol level

was twice the legal limit (id. at 210) – was consistent with his stipulation.  There was no

breach of the agreement to stipulate to Petitioner's blood alcohol level.

The state appellate court's conclusion that Petitioner's prosecutorial misconduct

claim lacked merit was objectively reasonable.  Petitioner therefore has no right to

habeas relief on this claim.

## C.  The Jury Instructions

Petitioner also claims he is entitled to habeas relief because the trial court

erroneously instructed the jury on six counts even though he was tried on only five

counts.  The Michigan Court of Appeals found that Petitioner waived appellate review of

this claim because defense counsel expressed satisfaction with the court's jury

instructions.  The court of appeals also stated that, "[i]n any event, contrary to

defendant's argument, the trial court did not improperly refer to the dismissed charged

in its instructions."  Armstrong, 2008 WL 4603585, at *8.[4]

The question on habeas corpus review of jury instructions is whether the

instructions violated some right guaranteed the defendant by the Fourteenth

_____

[4]  Respondent argues that Petitioner's claim is procedurally defaulted because
he waived the claim.  In the interest of efficiency, the Court will review the substantive
merits of Petitioner's claim, rather than analyze whether the claim is procedurally
defaulted.

25

Amendment or infected the entire trial to the extent that the resulting conviction violates

due process.  Cupp v. Naughten, 414 U.S. 141, 146-47 (1973).  To prevail on his claim,

"Petitioner must show that the instructions, as a whole, were so infirm that they

rendered the entire trial fundamentally unfair."  Murr v. United States, 200 F.3d 895, 906

(6th Cir. 2000) (citing Estelle v. McGuire, 502 U.S. 62, 72 (1991)).

The disputed remarks in this case read:

> The defendant is charged with six counts; that is, with the crimes of
> weapons - carrying concealed; weapons- firearms - possession by felon;
> weapons - felony firearm; assaulting and resisting a police officer;
> operating while intoxicated or the lesser offense of operating while visibly
> impaired, and weapon, firearm possession –
>
> Strike that.
>
> – operating while visibly impaired.

(Tr. Jan. 30, 2007, at 22.)

Petitioner was tried on five counts, and he contends that the quoted remarks

allowed the jury to consider more unfavorable character evidence and to speculate

about an additional count.  The trial court, however, had previously explained the

elements of the five counts for which Petitioner stood trial (id. at 13-20), and, after

making the remark about a sixth count, the trial court read the verdict form, which

indicated that there were five counts.  The trial court also instructed the jurors that its

comments and instructions were not evidence.  (Id. at 7.)  At no point did the court

instruct the jury on the elements of the sixth count (possession of a firearm while

intoxicated), which was dismissed before trial.  (Tr. Jan. 26, 2007, at 4; Tr. Jan. 29,

2007, at 192.)  The prosecutor also consistently maintained throughout the trial that

Petitioner was charged with five counts.  (Tr. Jan. 26, 2007, at 57-58; Tr. Jan. 29, 2007,

at 202-12, 230-32.)

The jury could have concluded that the trial court made a slip of the tongue when it referred to a sixth count.  The error did not render Petitioner's trial fundamentally unfair.  Thus, Petitioner has no right to relief on the basis of his claim about the jury instructions.

### D.  The Police Officers' Conduct

Petitioner also says that the police committed misconduct by (1) testifying that they discovered the gun under the car when they actually planted it there, (2) tampering with the evidence, (3) intimidating Joypalova Alford to testify falsely, (4) reconstructing Joypalova Alford's statement to the police, and (5) conducting an illegal search and seizure based on racial profiling.  Petitioner also appears to allege that the police "doctored" the videotape of the incident to make it appear that a dark spot on the videotape was a gun in the car door on the driver's side.  Each allegation is addressed below.

### 1.  Perjury and Tampering with Evidence

The record does not support the allegation that the police officers perjured their testimony about the gun.  Alford testified, and videotape confirmed, that there was a gun in the pouch of the car door as Petitioner scuffled with the police.  One of the officers heard something metal hit the pavement during the scuffle, but the three officers who restrained Petitioner did not notice the gun until Boal arrived on the scene and pointed out the gun under Petitioner's vehicle.  Because there was no evidence that the police officers tampered with the gun or other evidence, the officers "'are entitled to the presumption of integrity.'"  United States v. Robinson, 617 F.3d 984, 990 (8th Cir. 2010)

27

(quoting United States v. Miller, 994 F.2d 441, 443-44 (8th Cir. 1993)).

### 2. Intimidating Witnesses and Reconstructing a Witness's Statement

The allegation that the police intimidated witnesses also lacks merit. Alford testified that the first statement she gave to the police occurred during an interview in the courtroom with both the prosecutor and defense counsel present. She stated that she gave a verbal statement, that the police officer took notes, and that she signed the statement after looking it over and confirming that the information was true. (Tr. Jan. 26, 2007, at 208-09, 215-18.) There is no evidence that the police intimidated Alford to testify falsely or that they reconstructed her statement.

### 3. The Search and Seizure

Petitioner's final claim about the police is that they conducted an illegal search and seizure based on racial profiling. Van Lacken, however, testified that he stopped Petitioner because Petitioner was going twenty miles over the speed limit and Van Lacken thought Petitioner might be intoxicated. Petitioner was weaving as he drove, and he crossed over the center line into the lanes reserved for oncoming traffic. After Van Lacken stopped Petitioner, he could smell intoxicants coming from the car, and Petitioner had some difficulty passing his license, car registration, and proof of insurance through the six- to seven-inch opening in the window of his car. This led Van Lacken to believe that Petitioner might be impaired. (Tr. Jan. 29, 2007, at 41-42, 44-45, 49-51.)

Van Lacken attempted to conduct a field sobriety test to determine whether Petitioner was capable of driving. The subsequent pat-down search for weapons was based on Petitioner's attitude, which made Van Lacken uneasy, and on a dispatcher's

28

alert that aired as Van Lacken was speaking with Petitioner.  (Id. at 52, 54.)   Petitioner was handcuffed and placed in custody because he was uncooperative and tried to get away from the officers.  (Id. at 57-58.)

Petitioner's friend, Alford, confirmed that Petitioner had been drinking and seemed to be under the influence of alcohol.  He was swerving in and out of traffic lanes, and she thought that he deserved to be stopped.  (Tr. Jan. 26, 2007, at 160-62, 208.)  She admitted that Petitioner had lied to the police when he said he had not been drinking.  She also admitted that Petitioner had refused the officers' command to get out of the car, and he later tried to get back in the car while he was being searched.  (Id. at 168-69, 214, 219.)

In light of all of the above, it is clear that the officers acted appropriately.  There is no evidence in the record that the police conduct was based on Petitioner's race.  The court of appeals' similar conclusion was objectively reasonable.

### E.  The Weight of the Evidence

In Petitioner's fifth and final habeas claim, he says that the jury's verdict was against the great weight of the evidence.  Petitioner appears to allege that prosecution witnesses Van Lacken, Langewicz, Bole, and Alford offered inherently incredible testimony and that the State's exhibits were invalid.  More specifically, Petitioner contends that Alford's testimony about seeing the wooden handle of a gun in the pouch of the car door on the driver's side was improbable.  He claims that Alford was not wearing her glasses, the gun handle was wrapped in black electrical tape at the time, and he was blocking her view.

The Michigan Court of Appeals rejected this claim, stating:

29

> there is no merit to defendant's unpreserved claim that the jury's verdict
> was against the great weight of the evidence.  Defendant has failed to
> show that the witnesses' testimony was so improbable or so far
> impeached that it could not be believed; accordingly, there is no
> justification for overturning the jury's verdict.

Armstrong, 2008 WL 4603585, at *8 (citing People v. Lemmon, 576 N.W.2d 129 (Mich. 1998)).

The contention that Petitioner's convictions were against the weight of the evidence is a state-law argument, and a federal habeas court is allowed to review only issues of federal law.  Nash v. Eberlin, 258 F. App'x 761, 764 n.4 (6th Cir. 2007).  Thus, Petitioner's weight-of-the-evidence argument is not cognizable on habeas corpus review.

However, the Court could construe Petitioner's claim to allege that the evidence was insufficient to establish Petitioner's guilt beyond a reasonable doubt in violation of his constitutional rights.  "[A] conviction with insufficient evidence violates the defendant's federal due process rights."  White v. Steele, 602 F.3d 707, 709 (6th Cir. 2009) (citing Jackson v. Virginia, 443 U.S. 307, 316 (1979), cert. denied,     U.S. __, 131 S. Ct. 130 (2010).  "To determine whether sufficient evidence supports a particular conviction, 'the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'"  Id. (quoting Jackson, 443 U.S. at 319).

The prosecutor established that Petitioner was driving while intoxicated on January 27, 2006, and that he possessed a concealed firearm even though he was not eligible to carry a firearm.  The prosecutor also established that Petitioner resisted the

30

police by not obeying their commands and by attempting to re-enter his car while the police were searching him.  Petitioner did not testify or present any witnesses to contradict this evidence.

A rational trier of fact could have concluded from the evidence taken in the light most favorable to the prosecution that the prosecutor proved his case beyond a reasonable doubt.  The evidence, therefore, was sufficient to establish Petitioner's guilt.

Moreover, Petitioner is merely challenging the credibility of prosecution witnesses.  When evaluating a sufficiency-of-the-evidence claim,

> [a] reviewing court does not reweigh the evidence or redetermine the credibility of the witnesses whose demeanor has been observed by the trial court.  Marshall v. Lonberger, 459 U.S. 422, 434, 103 S.Ct. 843, 74 L.Ed.2d 646 (1983).  It is the province of the factfinder to weigh the probative value of the evidence and resolve any conflicts in testimony.  Neal v. Morris, 972 F.2d 675, 679 (6th Cir. 1992).  An assessment of the credibility of witnesses is generally beyond the scope of federal habeas review of sufficiency of evidence claims.  Gall v. Parker, 231 F.3d 265, 286 (6th Cir. 2000).

Matthews v. Abramajtys, 319 F.3d 780, 788 (6th Cir. 2003).

For all these reasons, Petitioner's fifth and final claim lacks merit.  The state court's decision was not contrary to, or an unreasonable application of, Jackson.

### V.  Conclusion

For reasons stated above, the state appellate court's decision was not contrary to clearly established federal law as determined by the Supreme Court, an unreasonable application of clearly established federal law, or an unreasonable determination of the facts.

Accordingly, the petition is DENIED.

Further, because reasonable jurists could not debate whether the petition should

31

have been resolved differently or whether the issues deserve encouragement to

proceed further, the Court DECLINES to grant a certificate of appealability under 28

U.S.C. § 2253(c)(2). Slack v. McDaniel, 529 U.S. 473, 484 (2000) (quoting Barefoot v.

Estelle, 463 U.S. 880, 893 n.4 1983)).

      SO ORDERED.


              S/Avern Cohn
              AVERN COHN
              UNITED STATES DISTRICT JUDGE


Dated:  January 26, 2012


I hereby certify that a copy of the foregoing document was mailed to Akili Armstrong,
383767, Ojibway Correctional Facility, N5705 Ojibway Road, Marenisco, MI 49947
and the attorneys of record on this date, January 26, 2012, by electronic and/or ordinary
mail.


              S/Julie Owens
              Case Manager, (313) 234-5160